UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

4BRAVA, LLC,                                    CIVIL NO. 15-2744 (JRT/DTS)

      Plaintiff,

v.                                             REPORT AND RECOMMENDATION
                                               and
DANIEL SACHS,                                  ORDER
DSC PRODUCTS, INC. and
DSC PRODUCTS HOLDING, LLC,

      Defendants.

---

Adrianna Shannon, Esq., Shannon Law, LLC, 333 South Seventh Street, Suite 2830, Minneapolis, MN 55402, for plaintiff.

William Skolnick, Esq., Andrew Bardwell, Esq. and Samuel Johnson, Esq., Skolnick & Joyce, P.A., 527 Marquette Avenue South, Suite 2100, Minneapolis, MN 55402, for defendants

---

## INTRODUCTION

Defendants removed this case to federal court in 2015 asserting diversity jurisdiction under 28 U.S.C. § 1332. Now, two years, two (possibly three) changes in counsel, one order for partial summary judgment, numerous discovery motions, two separate bankruptcy filings (and subsequent dismissals), two settlement conferences, and one contempt citation later, defendants have discovered an unnamed, yet indispensable, party that destroys diversity jurisdiction. They ask this Court to undo their removal and remand the matter to state court. This Court reluctantly concludes that it lacks jurisdiction over portions of this matter and therefore remands those

portions to state court.  The Court retains jurisdiction over other portions of 4Brava's claims.[1]

## BACKGROUND

This case involves a dispute between diverse members of Three Two Eight LLC ("Three Two Eight"), a now-defunct business venture that was formed to sell plastic tumblers to retailers such as Walmart.  As currently captioned, there is complete diversity of citizenship – plaintiff 4Brava LLC ("4Brava") is a citizen of the Minnesota and Florida and all defendants are citizens of California.  Three Two Eight – not a party when the action was filed – is a citizen of Minnesota, Florida and California.[2]

4Brava filed a Complaint against defendants in Hennepin County District Court alleging multiple causes of action, including fraud, civil theft, breach of fiduciary duty and unjust enrichment.  4Brava did not name Three Two Eight as either a defendant or an involuntary plaintiff.

Defendants removed the case to federal court on June 17, 2015, alleging complete diversity of citizenship, and timely answered the Complaint five days later on June 22, 2015.  In their Answer, defendants expressly denied that Daniel Sachs had any managerial control over Three Two Eight and stated that, while DSC Products Holding LLC ("DSC Products Holding") had an "interest" in Three Two Eight, it did not have a "membership interest" in it.[3]  *See* Answer ¶¶ 23-24, Docket No. 3.  In response

---

[1]      The defendants' remand motion and the Court's ruling on it pertain only to the claims brought in Civil No. 15-2744, not the related case of Civil No. 15-2743.

[2]      Three Two Eight LLC's citizenship is discussed in greater detail *infra.*

[3]      A membership interest in a limited liability company is comprised of both financial rights and governance rights. *See* Minn. Stat. § 322B.03, subd. 31.  Defendants at the beginning of the case claimed that Sachs was not a manager of Three Two Eight,

to 4Brava's motion for a preliminary injunction, Sachs filed a declaration in which he stated, under penalty of perjury, that Three Two Eight was never actually created by the parties. *See* Sachs Decl. (Aug. 17, 2015) ¶ 5 ("While it is true that both I and the LeDuc family took steps towards forming a joint venture, the joint venture never came to fruition . . . ."), Docket No. 31. In response to 4Brava's motion for summary judgment, Sachs filed another declaration in which he repeated, under penalty of perjury, that the parties never reached an agreement to create Three Two Eight and that he was never an "officer, director, or manager" of it. *See* Sachs Decl. (Oct. 19, 2016) ¶ 19 ("no final agreement was ever reached . . . on forming a joint venture") and ¶ 20 ("I never agreed to be an officer, director or manager of Three Two Eight, LLC. Neither myself individually, nor either of the closely-held entities that I operate . . . agreed to be a member of Three Two Eight, LLC."), Docket No. 122.[4] The stated purpose of Sachs's declarations was "to provide true and accurate testimony regarding facts and circumstances relevant to the aforementioned litigation of which I have personal knowledge." *See* ¶ 1 of Sachs's Aug. 17, 2015 and Oct. 19, 2016 Declarations, Docket Nos. 31, 122.

The Court denied 4Brava's motion for a preliminary injunction on August 24, 2015 [Docket No. 34] and the parties proceeded to litigate the merits of their dispute. Over the next 19 months, the parties engaged in vigorous proceedings in which they

---

leading the Court to believe that defendants, at most, had only a financial interest in Three Two Eight.

[4]      In various filings with the Court, defendants used the term "joint venture" or "contemplated joint venture" in keeping with their then-existing position (later reversed) that they never formed an LLC with 4Brava. However, the Court found that 4Brava LLC and DSC Products Holding LLC formed Three Two Eight as an LLC. *See* Mar. 30, 2017 Summary Judgment Order & Mem. 34, Docket No. 131; *see also* discussion *infra.*

involved the Court, including several motions to compel and/or stay discovery, several aborted settlement conferences, and innumerable letters to and conferences with the Magistrate Judges.

On March 30, 2017, the Court issued a detailed and carefully reasoned 59-page Order and Memorandum, granting in part and denying in part 4Brava's motion for summary judgment.[5]  Docket No. 131.  In their opposition brief, defendants had again asserted that Three Two Eight had never actually come into existence.  *See* Def. Br. 3 ("Three Two Eight, LLC was never formed"), Docket No. 121.  The Court found otherwise.  *See* Mar. 30, 2017 Summary Judgment Order & Mem. 34, Docket No. 131.

In the nine months since the Court issued its Memorandum Opinion and Order, the parties have embroiled the Court in numerous contentious and time-consuming proceedings, including (1) a day-long settlement conference; (2) a two-day hearing on a motion for contempt sanctions against defendants; (3) a second motion to compel discovery; (4) two motions to withdraw as defendants' counsel without substitution; (5) two separate bankruptcy filings which were filed, then abandoned, by the defendants; (6) several motions to seal documents; and (7) a motion to reopen discovery.  Through all these proceedings – including the aborted bankruptcy filings undertaken in part with the purpose of obtaining a stay of this litigation – defendants never once asserted that Three Two Eight existed, that any of them were members of it, or that it was an indispensable party to this litigation.

---

[5]     Motions for summary judgment were brought in both Civil No. 15-2744 [Docket No. 102] and related case Civil No. 15-2743 [Docket No. 112].  A hearing on the multiple motions in both cases was held on January 6, 2017.  *See* 15-2744 Docket No. 129 and 15-2743 Docket No. 159.

On October 24, 2017, defendants moved to remand this lawsuit to state court, asserting for the first time that Three Two Eight not only exists, but is an indispensable party that must be joined in the lawsuit and, moreover, because plaintiff and defendants together comprise its membership, its joinder destroys diversity jurisdiction, requiring remand.  Docket Nos. 296 (motion), 298 (brief).  In short,  defendants are now asserting a contrary factual and legal position from the one they have taken throughout this litigation, the position that Sachs swore under penalty of perjury was "true and accurate testimony regarding the facts and circumstances" concerning Three Two Eight and his/his company's  interest therein.  In support of his remand motion, Sachs again filed a sworn declaration under penalty of perjury.  In what appears an attempt to walk a very fine and dangerous line, Sachs now declares, "At all times relevant hereto I was the sole member of DSC Products Holding, LLC, a company I formed to hold a membership interest in Three Two Eight, LLC."  Sachs Decl. (Oct. 5, 2017) ¶ 1, Docket No. 299.[6]

And so, Sachs's machinations continue.  If this latest attempt to avoid a trial did not implicate this Court's subject matter jurisdiction, it would be summarily denied. However, for the reasons set forth below, the Court is persuaded that it lacks jurisdiction over certain claims, which claims must be remanded as outlined below.

### DISCUSSION

### 1.    Federal Diversity Jurisdiction and LLC Citizenship

---

[6]    Interestingly, in their brief and during oral argument, defendants cite factual findings in the Court's summary judgment order to support their assertion that derivative claims are present and that DSC Products Holding was always a member of Three Two Eight, while at the same time arguing that the Court had no authority to issue that order because it lacked subject matter jurisdiction over this lawsuit.

The question of the Court's subject matter jurisdiction can be raised at any time before the entry of a final judgment. *Buckley v. Control Data Corp.*, 923 F.2d 96, 97 n.5 (8th Cir. 1991). If at any time before final judgment it appears that the Court lacks subject matter jurisdiction, the case must be remanded. 28 U.S.C. § 1447(c). An order remanding the case may require payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of the removal. *Id.*

Federal court diversity jurisdiction over state law claims requires complete diversity of citizenship among the litigants. 28 U.S.C. § 1332(a); *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship. *OnePoint Solutions*, 486 F.3d at 346 (citing *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373 (1978)). An LLC's citizenship, for purposes of diversity jurisdiction, is the citizenship of each of its members. *Id.* A member of an LLC may itself have multiple members – and thus may itself have multiple citizenships – so the citizenship of each "sub-member" must also be considered. *American Seeds, LLC v. Dalchow*, Civil No. 12-2951, 2012 WL 5931721, at *1 (D. Minn. Nov. 27, 2012) (citing *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). The state in which an LLC is organized is not considered for citizenship purposes. *OnePoint Solutions*, 486 F.3d at 347 n.4. To determine jurisdiction, we look to the parties' status at the time the lawsuit was filed. *Id.* at 346 (citing *Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 570 (2004)).

**2.    Citizenship of the Parties and Three Two Eight LLC**

The Court previously found that Three Two Eight LLC was formed by 4Brava LLC and DSC Products Holding LLC to produce and sell double-wall tumblers to Walmart, Menard's and other mass-market retailers.  *See* Mar. 30, 2017 Summary Judgment Order & Mem. 34 ("[T]he parties formed Three Two Eight as a limited liability company . . . .  Based on that relationship, Sachs and DSC Products Holding owed duties to . . . Three Two Eight. . . . Therefore, contrary to Defendants' assertions, Sachs and DSC Products Holding owed fiduciary duties as managers and members of Three Two Eight.") and 35 ("[T]he record clearly shows the initial and primary purpose of Three Two Eight was to complete the Walmart orders and supply tumblers to Walmart."), Docket No. 131.[7]  Three Two Eight was registered as a Minnesota LLC.

---

[7]    The Court considered the entire record, including conflicting statements from Sachs.  *See* Mar. 30, 2017 Order & Mem. 21 ("[W]hile the Court will not entirely disregard Sachs' declaration as a 'sham,' the Court will look to all the evidence presented . . . .  In particular, there are several statements in the declaration that significantly conflict with the evidence or prior testimony; these parts of the declaration are, at best, misleading or exaggerated."), Docket No. 131. The Court discussed examples in the record and found that "the parties engaged in more than mere negotiation to form Three Two Eight.  Instead, the record shows the parties engaged in business under the name of their joint venture, Three Two Eight, and Sachs himself signed contracts and opened a bank account under the name Three Two Eight."  *Id.* at 21-22, 34.

Both before and since the Court's March 30, 2017 summary judgment ruling, Sachs has made conflicting and calculatedly vague statements regarding DSC Products Holding LLC's status as a "member" of Three Two Eight.  *See, e.g.,* Answer (June 22, 2015) ¶ 24 ("Defendant admits that DSC Holding has an interest in Three Two Eight, LLC."), Docket No. 3; Sachs Decl. (Oct. 19, 2016) ¶ 20 ("Neither myself individually, nor either of the closely-held entities that I operate, DSC Products, Inc. and DSC Products Holding, LLC, agreed to be a member of Three Two Eight, LLC.") and ¶ 29 ("Three Two Eight, LLC was not an entity in which I had ownership interest"), Docket No. 122; Sachs Decl. (Oct. 5, 2017) ¶ 1 ("At all times relevant hereto I was the sole member of DSC Products Holding, LLC, a company I formed to hold a membership interest in Three Two Eight, LLC."); Docket No. 299.

Sachs's latest declaration dated October 5, 2017 does not alter or undermine the Court's previous finding that DSC Products Holding was a member of Three Two Eight.  Regardless of Sachs's shifting characterizations over time, the record is clear now, as it

Complaint ¶ 23, Docket No. 1-1; *see also* LLC documents on file with Minnesota Secretary of State, https://mblsportal.sos.state.mn.us/Business.

The members of 4Brava are citizens of Minnesota and Florida.[8]  Sachs, a California citizen, is the sole member of DSC Products Holding.  Notice of Removal ¶ 3.b.iv., Answer ¶¶ 2, 17-18, Sachs Decl. (Oct. 5, 2017) ¶ 1, Docket Nos. 1, 3, 299; *see also* LLC documents on file with the Wyoming Secretary of State, https://wyobiz.wy.gov.  Therefore, at the time it was formed, Three Two Eight was a citizen of Minnesota, Florida and California.  The members of Three Two Eight did not sign a member control agreement or establish any organizational bylaws.  Complaint ¶ 25, Answer ¶ 25, Docket Nos. 1-1, 3.  Sachs dissolved DSC Products Holding on December 11, 2015.  *See* Certificate of Dissolution, https://wyobiz.wy.gov.[9]

---

was before – including Sachs's own testimony and documents – that he and the LeDucs formed a joint business venture – in the form of an LLC – to produce and sell tumblers to mass-market retailers.  *See, e.g.,* Sachs Dep. 185-86, 202-03, 206-07, Docket No. 124-1; Shannon Decl. Ex. 14 (Jan. 6, 2015 email from Sachs to Bruce, Jennea and Marcellas LeDuc: "As soon as our new company is set up we can submit a change order to Aroplax from our new company.") and Ex. 21 (Feb. 23, 2015 email from Sachs to Bruce LeDuc, cc: Jennea LeDuc and Adrianna Shannon: "What I do know is that I promise that I will get this set up so that we all have security knowing that the money from [W]almart PO's will be funded into our new partnership."), Docket No. 107; Sachs Decl. (Oct. 5, 2017) ¶ 1 ("DSC Products Holding, LLC, a company I formed to hold a membership interest in Three Two Eight, LLC"), Docket No. 299.

[8]     4Brava has two members: Marcellas (Marci) LeDuc, a citizen of Minnesota, and Jennea LeDuc, a citizen of Florida.  Jennea LeDuc Decl. ¶¶ 1, 11, Docket No. 12. While Marcellas's Minnesota citizenship is not explicitly and separately stated in any document, the parties have always known that she is a Minnesota citizen, defendants do not dispute it, and it was reaffirmed on the record at the December 11, 2017 status conference.

[9]     It appears that defendants did not notify the Court that Sachs had dissolved DSC Products Holding LLC until after the March 30, 2017 Summary Judgment Order & Memorandum, in an email communication from defense counsel to the Court relating to 4Brava's contempt motion against defendants.  The "dissolution of a member that is an organization" terminates that member's membership in an LLC.  *See* Minn. Stat. § 322B.306, subd. 1(ix).   However, because DSC Products Holding LLC was not

The parties do not dispute that there is complete diversity between the named plaintiff and defendants.[10]   Rather, they disagree on whether Three Two Eight is an indispensable party that must be joined to the lawsuit and, if so, whether joinder would destroy complete diversity of citizenship and thus divest the Court of subject matter jurisdiction.  Defendants say the answer is yes and this case must be remanded to state court.  Specifically, Defendants allege that (1) 4Brava's claims include derivative (rather than direct) claims that belong to Three Two Eight, not 4Brava, (2) Three Two Eight is therefore an indispensable party, and (3) joinder of Three Two Eight destroys diversity jurisdiction because, when the lawsuit was filed, it was a citizen of Minnesota, Florida and California; thus, regardless of whether Three Two Eight is joined as a plaintiff or a defendant, it will always share citizenship with at least one other party on the opposing side.

4Brava disagrees, contending that (1) its claims against defendant are not derivative, (2) Three Two Eight is not an indispensable party, and (3) even if Three Two Eight were joined in this lawsuit, there would still be complete diversity of citizenship because DSC Products Holding's membership in Three Two Eight was terminated by the time 4Brava filed this lawsuit.  If DSC Products Holding was not a member when this

---

dissolved until several months after this lawsuit was filed, it is not dispositive regarding Two Three Eight's citizenship (i.e., membership) for purposes of federal diversity jurisdiction.  See discussion *infra.*

[10]    Defendant DSC Products, Inc. is a California corporation with its principal place of business in California.  Answer ¶ 3, Docket No. 3; *see also* corporate documents on file with California Secretary of State, https://businesssearch.sos.ca.gov. The citizenship of plaintiff 4Brava LLC and defendants Sachs and DSC Products Holding LLC are discussed *supra*.

lawsuit was filed, its California citizenship does not count when identifying Three Two Eight's citizenship.[11]

### 3.    Direct or Derivative Claims and Indispensable Party

Whether 4Brava's claims are direct or derivative is a question of Minnesota law. *See Buckley,* 923 F.2d at 98.  A claim is analyzed by identifying "who suffered the injury alleged and thus who would receive the benefit of any recovery." *In re Medtronic, Inc. Shareholder Litigation*, 900 N.W.2d 401, 408 (Minn. 2017).  If the company is the one who suffers the injury and would receive any recovery, the claim is derivative; if the member suffered the injury and would receive any recovery, the claim is direct.  *See id.* at 408-09.  Although the distinction between the two types of claims "can be easily stated, the line that separates the two claims is not easily drawn." *Id.* at 406.

The business entity is the true party in interest when derivative claims are present.  *See Koster v. (American) Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 522-23 (1947) (corporation is real party in interest for derivative claims); *Buckley*, 923 F.2d at 98 (same for limited partnerships).  "A member has no interest in specific limited liability company property.  All property of the limited liability company is property of the limited liability company itself."  Minn. Stat. § 322B.30, subd. 1.

4Brava asserted ten counts in its Complaint: breach of fiduciary duties, misrepresentation/fraud, civil theft, conversion, an accounting, illegal distribution, statutory dissolution, unjust enrichment, promissory estoppel, and breach of contract. Docket No. 1-1.  The Court concludes that one of the counts, for breach of fiduciary duties, includes both direct and derivative claims; five counts are derivative claims: civil

---

[11]    4Brava's argument assumes that any joinder of Three Two Eight would be as a plaintiff.

theft, conversion, an accounting pursuant to Minn. Stat. § 322B.376, illegal distribution, and unjust enrichment; and four counts are direct claims: misrepresentation/fraud, promissory estoppel, breach of contract, and statutory dissolution pursuant to Minn. Stat. § 322B.833, subd. 1(2)(i) and (ii).

### A.    Direct Claims

4Brava's claims for misrepresentation/fraud, promissory estoppel, breach of contract, statutory dissolution pursuant to Minn. Stat. § 322B.833, subd. 1(2)(i) and (ii), and breach of fiduciary duties owed to 4Brava are direct claims, not derivative. 4Brava's fraud count alleges that Sachs and DSC Products Holding told 4Brava and Jennea LeDuc that she was being added as a signatory to a bank account and that they would change vendor account information, and 4Brava relied on these fraudulent misrepresentations which caused injury to 4Brava.  Complaint ¶¶ 95-98, Docket No. 1-1.  4Brava's promissory estoppel count alleges that defendants made promises to induce 4Brava to continue doing business with them and that, in reasonable reliance on the promises, 4Brava continued doing work and investing money in Three Two Eight. *Id.* ¶¶ 130-33.  4Brava's breach of contract count alleges that Sachs and DSC Products, Inc. made an agreement with 4Brava for a joint business venture and that they breached the terms of that agreement, causing damages to 4Brava.  *Id.* ¶¶ 135-41. Defendants' promises and misrepresentations directly affected 4Brava's decisions to continue making investments in the business.  4Brava's breach of fiduciary duty count alleges that Sachs and DSC Products Holding owed fiduciary duties to 4Brava and their breach of those duties caused damage to 4Brava.  *Id.* ¶¶ 89-93.  For example, 4Brava alleges that defendants' dishonesty in their dealings with 4Brava, including failing to

credit its account, and other actions to disadvantage 4Brava were unfairly prejudicial to 4Brava. 4Brava continued to provide product, obtain loans, and cover debts and expenses. This is not injury suffered by all (both) members equally and indirectly due to wasting of Two Three Eight's assets; rather, 4Brava alleges injury specifically and directly suffered by 4Brava. With respect to these claims, 4Brava is suing on its own behalf for injuries it sustained. Such claims are direct, not derivative, and thus Three Two Eight is not an indispensable party for litigating them.

Likewise, 4Brava's count seeking statutory dissolution of Three Two Eight pursuant to Minn. Stat. § 322B.833, subd. 1(2)(i) and (ii) [Complaint ¶¶ 119-22, Docket No. 1-1] is brought as a direct claim and, under the language of the statute, Three Two Eight is not an indispensable party. Subdivision 1 authorizes a court to "dissolve, wind up, and terminate a limited liability company" under certain circumstances identified in the statute. Minn. Stat. § 322B.833, subd. 1. Those circumstances include "an action by a member" when it is established that management of the LLC is deadlocked and "the members are unable to break the deadlock"; or that "those in control of the limited liability company have acted fraudulently, illegally, or in a manner unfairly prejudicial *toward one of more members*." *Id.*, subd. 1(2)(i) and (ii) (emphasis added). The statutory language thus contemplates a lawsuit brought "by a member" directly. It also contemplates harm suffered by a member, not by the LLC, when it states that one of the grounds to obtain judicial intervention is when the member bringing the lawsuit establishes that a person has acted fraudulently, illegally, or in a manner unfairly prejudicial "toward one or more members."

12

Section 322B.833 is not limited to derivative actions and does not state that an LLC is a necessary or indispensable party to all actions brought under this section. Subdivision 8 entitled "Venue and parties" by its terms does not require that an LLC be joined as a party. The fact that subdivision 8 says that members are not necessary parties to an action unless relief is sought against them personally, is not the same as saying an LLC *is* a necessary party in an action under this section. Section 322B.833 covers a variety of legal actions for various purposes. If an LLC were always a necessary party when seeking judicial intervention and remedies under this section, the language could have said so, but did not. *See, e.g.,* Minn. Stat. § 322B.22(2) (specifying that certain claims be brought "in a proceeding by or in the name of the limited liability company, whether acting directly or through a legal representative, or through members in a representative or derivative suit'). Therefore, the count in 4Brava's Complaint that seeks statutory dissolution of Three Two Eight pursuant to Minn. Stat. § 322B.833, subd. 1(2)(i) and (ii) is a direct claim for which Three Two Eight in not an indispensable party. [12]

Moreover, when the Court granted this remedy to 4Brava, it did so in the context of granting 4Brava's summary judgment motion on the claims for breach of fiduciary duties by defendants. *See* Summary Judgment Order & Mem. 33-38, Docket No. 131. As discussed above, the breach of fiduciary duty count encompasses both direct (duties owed to 4Brava) and derivative (duties owed to Three Two Eight) claims. The Court

---

[12] The count seeking statutory dissolution under § 322B.833 also includes a paragraph regarding appointment of a receiver pursuant to § 322B.836. *See* Complaint ¶ 123, Docket No. 1-1. However, as § 322B.836 refers back to proceedings under § 322B.833, it does not affect the Court's analysis that this count is a direct claim and Three Two Eight is not an indispensable party. *See* Minn. Stat. § 322B.836, subd. 1 ("In proceedings under section 322B.833, the court may . . . appoint receivers").

found that 4Brava was entitled as a matter of law to the remedy of dissolution under §

322B.833, subd. 1(2):

> The proper remedy and amount of damages present additional challenges.  But, the Court finds 4Brava established its entitlement to one particular remedy as a matter of law. Minnesota law provides for dissolution of an LLC in an action initiated by a member if it is established that the members are unable to break a deadlock, someone in control of the LLC "acted fraudulently, illegally, or in a manner unfairly prejudicial toward one or more members," or the LLC "assets are being misapplied or wasted," among other things. Minn. Stat. § 322B.833, subd. 1(2)(i)-(ii), (iv).[13]  Because the Court finds Sachs and DSC Products Holding breached their fiduciary duties, the Court will grant 4Brava's request for dissolution of Three Two Eight as set forth in Count VII of its Complaint. [Docket citation omitted.]  Accordingly, the Court will order dissolution and direct 4Brava to wind-up Three Two Eight in accordance with its unchallenged expert report.

*Id.* at 37-38.

Therefore, Three Two Eight is not an indispensable party to 4Brava's claims for

misrepresentation/fraud, promissory estoppel, breach of contract, statutory dissolution

pursuant to Minn. Stat. § 322B.833, subd. 1(2)(i) and (ii), and breach of fiduciary duties

owed to 4Brava.

## B.    Derivative Claims

4Brava's claims for civil theft, conversion, an accounting, illegal distribution,

unjust enrichment, and breach of fiduciary duties owed to Three Two Eight should have

been asserted as derivative claims.  4Brava's civil theft count alleges that defendants

stole Three Two Eight's income, profits, and assets, half of which belonged to 4Brava.

Complaint ¶¶ 100-03, Docket No. 1-1.  The conversion count alleges that defendants

---

[13]    4Brava's Complaint cited only paragraphs (i) and (ii), and not (iv), of subdivision 1(2), but the fact that additional provisions in subdivision 1(2) may apply and support the Court's summary judgment does not change the Court's analysis for purposes of the present motion before the Court.

wrongfully took control over all or most of Three Two Eight's income and assets and converted and/or transferred Three Two Eight's assets and income for their own pecuniary gain. *Id.* ¶¶ 105-09. The count seeking an accounting requests Three Two Eight's financial records from defendants pursuant to Minn. Stat. § 322B.376. *Id.* ¶¶ 111-13; *see* Minn. Stat. § 322B.376(b) ("Upon written request by a member, a limited liability company shall furnish its most recent annual financial statements").

4Brava's illegal distribution count alleges that defendants received unauthorized and illegal distributions from Three Two Eight. Complaint ¶¶ 115-17, Docket No. 1-1. The unjust enrichment count alleges that defendants diverted/retained funds and assets that properly belonged to Three Two Eight in which 4Brava held a 50% ownership interest. *Id.* ¶¶ 125-28. 4Brava's breach of fiduciary duty count alleges that Sachs and DSC Products Holding owed fiduciary duties to Three Two Eight and breached those duties in various ways, including by self-dealing, conducting Three Two Eight's business in the name of DSC Products, Inc., and taking excessive amounts of money out of Three Two Eight for their own benefit. *Id.* ¶¶ 89-92.

These claims are derivative, not direct, and Three Two Eight is an indispensable party for litigating them. For example, although 4Brava may be indirectly injured if Three Two Eight's assets are stolen because it potentially would not receive its fair share, Three Two Eight is the party directly injured by any theft, and it alone would receive any recovery. The same is true for conversion. Any LLC income or assets allegedly converted belong to Three Two Eight, not 4Brava. Similarly, the unjust enrichment allegations, while phrased in terms of defendants improperly receiving things of value from 4Brava, are premised on the fact that the funds and assets

15

belonged to Three Two Eight. *See, e.g.,* Complaint ¶¶ 125-26 (4Brava's "financial commitment to Three Two Eight"; 4Brava's "financial contributions" were made to Three Two Eight; defendants "retain[ed] the funds and assets to which Plaintiff held a 50% ownership interest"), Docket No. 1-1.

The count seeking an accounting specifically invokes Minn. Stat. § 322B.376 which, by its terms, obligates an LLC to prepare annual financial statements and to furnish them to any member who makes a written request to the LLC for them. 4Brava's illegal distribution count alleges that Three Two Eight made distributions to defendants and that such distributions were not authorized.[14] These counts involve actions by, or obligations of, Three Two Eight, not a member. The count alleging a breach of fiduciary duties owed to Three Two Eight pertain to defendants' alleged diversion of money, assets or corporate opportunities that belonged to Three Two Eight. These claims belong to Three Two Eight, not 4Brava.

4Brava contends that Three Two Eight is not an indispensable party and that, even if Three Two Eight is a required party under Federal Rule of Civil Procedure 19, the Court has discretion regarding whether to join it as a party. 4Brava Br. 6-9, Docket No. 310. However, the Rule 19 cases cited by 4Brava do not involve derivative claims and are not analogous to the circumstances in this case. *See id.* at 6. 4Brava also cites no authority to challenge the caselaw holding that entities such as LLCs are indispensable parties when derivative claims are asserted. *See Buckley*, 923 F.2d at 98

---

[14]    The concept of a "distribution" in this count is inapposite to 4Brava's theory in this case, because a distribution involves a transfer of money or property by an LLC to a member. 4Brava contends that defendants diverted money or assets away from Three Two Eight, not that Three Two Eight distributed money or assets to a member. *See* Summary Judgment Order & Mem. 39, Docket No. 131.

("we are convinced that all of appellants' claims below are in fact derivative claims, making the limited partnership an indispensable party").

Three Two Eight is an indispensable party for litigating the derivative claims asserted in 4Brava's Complaint. Therefore, these claims must be remanded to state court if joinder of Three Two Eight destroys diversity jurisdiction.

**4.      Termination of LLC Membership**

4Brava contends that, even if Three Two Eight were joined as a plaintiff, there would still be complete diversity of citizenship because DSC Products Holding's membership in Three Two Eight was terminated by the time 4Brava filed this lawsuit. If DSC Products Holding was not a member at the time of filing, its California citizenship does not count for purposes of Three Two Eight's citizenship.

Under Minnesota law, a member of an LLC has both governance rights and financial rights. *See* Minn. Stat. § 322B.03, subd. 31 ("Membership interest"). If membership in the LLC terminates but the LLC is not dissolved, the member loses its governance rights and retains only a financial interest in the LLC, as an assignee of the financial rights it owned before the termination of its membership:

> **Subd. 3. Effect of termination of membership on the rights of the terminated member.** If for any reason the continued membership of a member is terminated, then subject to the articles of organization and any member control agreement:
>
> (1) if the termination does not result in the dissolution of the limited liability company, the member whose membership has terminated loses all governance rights and will be considered merely an assignee of the financial rights owned before the termination of membership.

Minn. Stat. § 322B.306 ("Termination of a membership interest"), subd. 3(1). Once the governance rights are lost, the person or organization is no longer a "member" of the

LLC.  *See id.* § 322B.03, subd. 30 ("Member").  Accordingly, having lost its status as a member of an LLC, the state(s) of which it is a citizen is not considered for purposes of federal diversity jurisdiction because an LLC's citizenship is the citizenship of each of its members.  *See OnePoint Solutions*, 486 F.3d at 346.

"A member always has the power, though not necessarily the right, to terminate its membership by resigning or retiring at any time."  Minn. Stat. § 322B.306, subd. 1. Membership may be terminated in various ways, including by the member's death, expulsion or resignation, "redemption of the member's complete membership interest," and "the dissolution of a member that is an organization."  *See, e.g., id.*, subd. 1(i), (iii), (iv), (vii) and (ix).

4Brava argues that DSC Products Holding terminated its membership both by resigning as a member and by redeeming its membership interest before the lawsuit was filed, and states that the December 2015 dissolution of DSC Products Holding – several months after the lawsuit was filed – is consistent with its prior termination of membership in Three Two Eight.  4Brava Br. 4-5, Docket No. 310.  As support, 4Brava cites Sachs's sworn statements; the defendants' Answer; Sachs's May 18, 2015 email discussing possible dissolution of Three Two Eight; and the "redemption" of "over $1.4 million – far more than DSC Holding's complete membership interest in the company." *Id.* at 4.

However, the evidence cited by 4Brava does not establish that DSC Products Holding terminated its membership before this lawsuit was filed.  4Brava's state court Complaint was signed on June 3, 2015 and defendants removed it to federal court on June 17, 2015.  Docket Nos. 1, 1-1.  Sachs's May 18, 2015 email says nothing about

resigning from Three Two Eight; it states that the parties need to talk tomorrow and contains a set of talking points that refer to a proposed dissolution of Three Two Eight and how a wind-up might occur. Shannon Decl. Ex. 33, Docket No. 107. 4Brava's own Complaint characterizes the email as "proposing dissolution of," not resigning membership in, Three Two Eight: "That same day, on May 18, 2015, Sachs emailed 4Brava, LLC proposing dissolution of Three Two Eight, LLC." Complaint ¶ 60, Docket No. 1-1. In addition, 4Brava does not allege or identify any document in which the LeDucs or anyone on their behalf followed up with Sachs after the May 18 email to clarify whether it signified a "resignation" of membership.

4Brava also has not cited to anything in the record to indicate that DSC Products Holding "redeemed" its "complete membership interest." *See* Minn. Stat. § 322B.306, subd. 1(iv). What 4Brava alleges, in part, in this lawsuit is that defendants committed fraud, theft, conversion and unauthorized diversion of income and assets in an amount exceeding the value of DSC Products Holding's membership in Three Two Eight. This does not describe a "redemption" of a membership interest in an LLC.

The statements by Sachs that 4 Brava points to do not support its argument that DSC Products Holding resigned its membership. In those statements Sachs claims that DSC Products Holding was never a member of Three Two Eight, not that it resigned. *See* Sachs Decl. (Oct. 19, 2016) ¶ 20 ("Neither myself individually, nor either of the closely-held entities that I operate, DSC Products, Inc. and DSC Products Holding, LLC, agreed to be a member of Three Two Eight, LLC.") and ¶ 29 ("Three Two Eight, LLC was not an entity in which I had ownership interest"), Docket No. 122; 4Brava Br. 4-5, Docket No. 310.

Moreover, 4Brava's own statements give no indication that it viewed Sachs's May 18, 2015 email as a resignation of membership in Three Two Eight.  To the contrary, they reflect a belief that DSC Products Holding continued to be a member of Three Two Eight at the time 4Brava filed this lawsuit.  For example, Jennea LeDuc's May 27, 2015 email to Sachs and Marcellas and Bruce LeDuc attaches a "Notice of Special Meeting of Members of Three Two Eight, LLC" to "consider dissolving Three Two Eight."  Shannon Decl. Ex. 34, Docket No. 107.  The attached draft documents identify DSC Products Holding as a "member."  *Id.*  4Brava's Complaint refers to this same notice to "members."  *See* Complaint ¶ 74 ("On May 27, 2015, Jennea LeDuc issued a notice to Three Two Eight, LLC members of a special meeting to vote on a proposed dissolution of the organization, scheduled for June 11, 2015."), Docket No. 1-1.

4Brava's Complaint also states that "[t]o date, Three Two Eight, LLC is not dissolved, and Sachs has failed to execute a waiver of the special meeting and vote formalities regarding dissolution."  *Id.* ¶ 87.  Similar statements were made by Bruce and Jennea LeDuc in declarations filed on July 21, 2015, just a few weeks after this case was removed to federal court: "To date, Three Two Eight is not dissolved, and Sachs is refusing to engage in the necessary formalities to effectuate dissolution."  Bruce LeDuc Decl. ¶ 144, Jennea LeDuc Decl. ¶ 93, Docket Nos. 11, 12.

If 4Brava had viewed the May 18 email as a resignation of DSC Products Holding's membership, the 4Brava members would not have continued to refer to and correspond with DSC Products Holding as a "member" and to seek Sachs's involvement to dissolve or wind up Three Two Eight.  If it considered DSC Products Holding a non-

member without governance rights, it would not have sent him a special member meeting notice "to vote on a proposed dissolution of the organization" nor expected him "to engage in the necessary formalities to effectuate dissolution."  Although  4Brava's subjective belief, as expressed in its May 27, 2015 email, its Complaint and the declarations, is not dispositive, it lends weight to the conclusion that DSC Products Holding had not resigned its membership.

The evidence in the record does not establish that DSC Products Holding terminated its membership in Three Two Eight before 4Brava commenced this lawsuit. Although it is clear that the parties' business venture and relationship were unraveling, there was no express resignation or other termination of membership.  The weight of the evidence indicates that DSC Products Holding was still a member of Three Two Eight.  In addition, when a federal court's subject matter jurisdiction is implicated, any doubts must be resolved in favor of remand.  *See In re Business Men's Assur. Co. of America*, 992 F.2d 181, 183 (8th Cir. 1993) (citing *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d 1987)); *Masepohl v. American Tobacco Co., Inc.*, 974 F. Supp. 1245, 1249-50 (D. Minn. 1997).  Therefore, when this case was filed, Three Two Eight was a citizen of Minnesota, Florida and California.

**5.    Severing of Claims**

A court has the authority to sever any claim against a party.  Fed. R. Civ. P. 21; *Nhut Le v. Wells Fargo Bank,* Civil No. 13-1920, 2014 WL 1672260, at *4-5 (D. Minn. Mar. 17, 2014) (severing and remanding claims under Rule 21 for lack of diversity jurisdiction and subject matter jurisdiction); *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1039 (8th Cir. 1999) (severing and remanding claims under Rule 21).  Here, the

Court concludes it is appropriate and serves the interests of judicial efficiency to sever the direct from the derivative claims and to remand only the latter which, as discussed above, require the joinder of Three Two Eight as an indispensable party which, in turn, destroys complete diversity of citizenship and deprives the Court of subject matter jurisdiction over those claims.

It is appropriate to keep 4Brava's direct claims in this federal court action for several reasons. This lawsuit is in its very late stages, having been filed and removed from state court in June 2015. A related federal lawsuit, Civil No. 15-2743, involves substantially the same parties, each of whom is represented by the same counsel in both lawsuits; has overlapping subject matter and background facts; was filed and removed from state court at the same time as this lawsuit; is assigned to the same district court judge and magistrate judge; and has a trial date set for January 29, 2018. *See* Amended Trial Notice (Civil No. 15-2743), Docket No. 309. The parties and the Court have spent substantial time and resources litigating and adjudicating the claims in this lawsuit, including settlement conferences and summary judgment proceedings. Keeping the direct claims in this federal forum also is likely to decrease the scope and amount of attorney's fees and costs that 4Brava will submit to the Court, to recover from defendants, pursuant to the remand of the derivative claims to state court. Considering all the facts and circumstances, the Court concludes that it will remand only the derivative claims, over which the Court lacks subject matter jurisdiction.

## 6.    Attorney Fees and Costs

A defendant may remove a civil action filed in state court to a federal court where the action might originally have been brought. *Martin v. Franklin Capital Corp.*, 546 U.S.

22

132, 134 (2005) (citing 28 U.S.C. § 1441); *Convent Corp. v. City of North Little Rock*, 784 F.3d 479, 483 (8th Cir. 2015). A defendant has the initial burden to demonstrate original jurisdiction is present in a federal forum at the removal stage. *See In re Business Men's Assur. Co. of America*, 992 F.2d at 183. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

If the case is remanded, the court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal." *Id.* An award of costs and fees is just when "the removing party lacked an objectively reasonable basis for seeking removal" or when "unusual circumstances" are present. *See Martin*, 546 U.S. at 141. A court has discretion to consider whether unusual circumstances exist in a given case. "For instance, a [party's] delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees. When a court exercises its discretion in this manner, however, its reasons . . . should be faithful to the purposes of awarding fees under § 1447(c)." *Id.* (internal quotation marks omitted).

In a typical case, when considering whether to award fees and costs to a plaintiff under § 1447(c), the Court might begin its analysis by determining whether the removing party lacked an objectively reasonable basis for removal.[15] This is not a

---

[15] The removal in *Martin* involved a defendant's good faith calculation of the jurisdictional amount in controversy based on Tenth Circuit precedent that was only subsequently held to be unsound. *See Martin*, 546 U.S. at 135. The plaintiffs in *Martin* did not dispute the objective reasonableness of the defendant's grounds for removal, and the Supreme Court thus did not review the lower courts' decision on that point. *Id.* at 141. The removal now at issue before the Court presents circumstances altogether different.

typical case, however.  Here, it is defendants, not plaintiff 4Brava, who seek remand to state court, the same court from which they removed the case over two years ago. Their remand motion is based on a diversity-of-citizenship argument that is premised on sworn statements (regarding membership in an LLC) by defendant Sachs that contradict his multiple previous sworn statements and deposition testimony and defendants' Answer to the Complaint.  In light of this and other events in this litigation, the Court finds it appropriate to analyze this case as one involving "unusual circumstances."

In *Martin,* the Supreme Court provided guidance for awarding fees and costs under § 1447(c):

> Congress thought fee shifting appropriate in some cases. The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff. The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

*Martin*, 546 U.S. at 140.

4Brava brought this lawsuit in state court, and defendants removed it. 4Brava has never amended its original Complaint, nor has it introduced new or different legal theories or factual allegations in the course of the lawsuit.  At the time of removal, defendants possessed all of the necessary knowledge and information to assert their present position that 4Brava's Complaint includes derivative claims, that Three Two Eight is an indispensable party, and that DSC

Products Holding was a member of Three Two Eight when the lawsuit was filed. That information, of course, is contrary to their prior insistence that Three Two Eight was never formed and that neither Sachs nor DSC Products Holding was ever a member of it. Defendants had many opportunities to raise the present issue to the opposing party and the Court much earlier in the litigation – or indeed before they decided to remove the case from 4Brava's chosen state forum – most notably during the parties' extensive summary judgment briefing in both this case and the related case, Civil No. 15-2743. Defendants' actions have imposed substantial costs on 4Brava and severely hampered judicial economy. The Court finds that the *Martin* factors of "delay in seeking remand" and "failure to disclose facts necessary to determine jurisdiction" have been satisfied.

Defendants' long-delayed remand motion and their about-face on jurisdictional facts is only the latest move in their hide-and-seek litigation strategy. Defendants have demonstrated a pattern of gamesmanship, conflicting and/or false statements, and delay, including Sachs's deliberate failure to appear for court-ordered proceedings, punctuated by the hiring and firing of (and eventually the motions to withdraw by) multiple sets of lawyers as deadlines approach, obligations come due, and facts appear and rulings are made that are not to defendants' liking – all in an apparent effort to manipulate or deceive the opposing party and the Court. Defendants' actions have been discussed and abundantly documented in various filings, communications, and orders in this case, not to mention multiple *in camera* examinations of documents and hearings conducted in closed sessions of court. These actions are reflected in the docket

for this case,[16] and the Court will not spend more resources to repeat them all here.

Among other things, defendants have asked for extensions of time to comply, then failed to comply anyway, leading to delay and seemingly endless motions and hearings. For example, the March 30, 2017 summary judgment order required defendants to pay money by April 13, 2017. Docket No. 131. On April 12 defendants filed a motion seeking "clarification" of the order and asking for an extension of time because they were "unable to marshal the funds for the payment in that short time frame." Docket Nos. 134, 35. On April 13 the Court extended the deadline by two weeks, to April 27. Docket No. 140. Defendants did not pay by April 27 either. It later came to light in discovery documents that Sachs was able to marshal $250,000 out of his bank account and transfer it to his father's account on March 30, the same day as the summary judgment order was issued. *See* Report & Recommendation (June 29, 2017) at 8; Docket No. 241.

Variations on this theme are seen throughout this lawsuit. To the extent that defendants' stunts and delay tactics affected now-remanded claims, 4Brava's and the Court's time and resources have been wasted on them. To the extent they affected claims not subject to remand, it supports the Court's decision to sever and retain jurisdiction over those claims, so as not to lose the progress that has been made in this lawsuit over the past two-plus years.

---

[16]    The case docket has 340 entries.

The Court finds that "unusual circumstances" exist that warrant an award of costs and fees to 4Brava for time and expenses it incurred in the federal forum for items and proceedings that now are of no benefit because they relate to claims being remanded to state court. Such an award serves the purposes articulated by the Supreme Court in *Martin* and does not undermine Congressional intent to afford the right of removal to defendants when the truthful facts known to them satisfy the statutory criteria for removal. *See Martin,* 546 U.S. at 140. If 4Brava incurred fees or costs for briefing or proceedings that involved both remanded and non-remanded claims, the Court suggests that 4Brava provide an allocation of time and expense that was devoted to the remanded claims.

**7.   4Brava's Motion for Contempt**

On September 28, 2017 4Brava filed a motion for contempt [Docket No. 287] because defendants had failed to pay the amounts still owed and had not produced emails and financial records as ordered by the Court in its Orders filed on July 14, 2017 [Docket No. 246] and on July 24, 2017 (adopting Report & Recommendation) [Docket No. 248]. A hearing was held on October 24, 2017. Docket No. 322. On November 3, 2017, defendants filed objections [Docket No. 325] pursuant to the Court's October 27, 2017 Order [Docket No. 324].

The Court has considered the arguments made at the hearing and reviewed the written submissions of the parties and finds no grounds to depart from the Court's previous orders to defendants to produce the emails and financial records and to pay

the amounts previously ordered. Accordingly, the Court finds that defendants are in contempt for failing to comply with these orders.

Defendants are in contempt for failure to pay the amounts previously ordered, but based on the present state of the record the Court finds an inability to pay, as the Court stated on the record at the hearing. 4Brava has the right to renew its contempt motion regarding non-payment if additional evidence demonstrates an ability to pay. Defendants are also in contempt for failing to produce the emails and financial records. Defendant Sachs will face incarceration if those documents are not produced by the deadline set forth in the Court's Order below.

## 8.     Supplemental Summary Judgment Memorandum

On October 18, 2017 4Brava filed a Supplemental Memorandum in Support of Summary Judgment. Docket No. 311. 4Brava requests amendment of the Summary Judgment Order to include additional damages, prejudgment interest, and a constructive trust over certain property and funds. 4Brava. Supp. Br. 5-9, Docket No. 311. 4Brava also renews its request for summary judgment on its civil theft claim, based on a change in the law. *Id.* at 9-11.

As discussed above, the Court lacks jurisdiction over the civil theft claim and therefore cannot consider the merits of 4Brava's additional summary judgment arguments regarding this claim. In light of the Court's order on defendants' remand motion, it is not clear whether 4Brava's additional requests to amend the Summary Judgment Order are moot or whether they apply to this case or to the related case, Civil No. 15-2743, or both, as 4Brava filed its supplemental memorandum under a dual caption. The Court therefore denies 4Brava's requests without prejudice.

## RECOMMENDATION AND ORDER

## RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.    Defendants' Motion to Remand [Docket No. 296] be **DENIED IN PART** with respect to 4Brava's pleaded claims that are direct, and **GRANTED IN PART** with respect to 4Brava's pleaded claims that are derivative; and therefore:

      a.    The following claims be remanded to state court: civil theft (Count III), conversion (Count IV), an accounting (Count V), illegal distribution (Count VI), unjust enrichment (Count VIII), and to the extent that 4Brava wants to replead in state court the derivative portions of its claims for breach of fiduciary duties in Count I; and

      b.    This Court retain jurisdiction over the following claims: breach of fiduciary duties (Count I) consistent with the Court's opinion, misrepresentation/fraud (Count II), statutory dissolution (Count VII), promissory estoppel (Count IX), breach of contract (Count X).

2.    Defendants pay appropriate attorney fees and costs associated with the litigation in federal court, consistent with the Court's opinion; 4Brava will submit a petition for such fees and costs to the Court by January 16, 2018 .

3.    4Brava's Motion for Contempt [Docket No. 287] be **GRANTED** as follows:

      a.    Defendants are in contempt for failure to pay the amounts previously ordered, but based on the present state of the record the Court finds an inability to pay; 4Brava has the right to renew its motion if additional evidence demonstrates defendants' ability to pay.

b.    Defendants are in contempt for failure to comply with the Court's previous orders to produce emails and financial records; defendant Sachs will face incarceration if these documents are not produced by the deadline set forth in the Court's Order below.

4.    The Court lacks jurisdiction over the civil theft claim for which 4Brava filed a renewed request for summary judgment, as set forth in 4Brava's Supplemental Memorandum in Support of Summary Judgment [Docket No. 311]. The Court denies without prejudice 4Brava's remaining requests to amend the Summary Judgment Order, consistent with the Court's opinion.

## ORDER

For the reasons set forth above, IT IS HEREBY ORDERED THAT:

Defendants are in contempt for failing to produce emails and financial records, as described in the above opinion, pursuant to previous Orders of the Court. Defendants shall produce those documents no later than **January 16, 2018**, and defendant Sachs will face incarceration if they are not produced by that date.

Dated:  December  26, 2017

*s/ David T. Schultz*
DAVID T. SCHULTZ
United States Magistrate Judge

## <u>NOTICE</u>

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those

objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).